May it please the Court, Drew Siminski of the Law Offices of Chung Pong appearing on behalf of Petitioner. I'd like to reserve three minutes for rebuttal. Okay, count the clock down and we'll try to help you keep track. Thank you, Your Honor. Your Honor, this case turns on the question of whether the BIA expressly retained jurisdiction and limited the ability of the IJ to consider new evidence during its 2005 decision. Petitioner contends that it did not. Here, the immigration judge refused to consider new evidence presented by Petitioner because she felt that she was bound by the Board's order. However, this holding was erroneous because the Board did not expressly retain jurisdiction and did not limit or qualify the remand in 2005. The Board has previously held that, quote, an immigration judge's jurisdiction is only narrowed when the Board expressly retains jurisdiction and qualifies or limits the remand to a specific purpose. This Court held the exact same thing in Fernandez v. Holder, a published case, by stating that, quote, the IJ's jurisdiction on remand from the BIA is limited only when the BIA expressly retains jurisdiction and qualifies or limits the scope of the remand to a specific purpose. Now, is any member of this panel supposed to be familiar with that case? Your Honor, this was submitted to the Court by a respondent as a... I'm teasing you. Judge Smith wrote the opinion and I was on the panel. I'm sorry, Your Honor. I didn't pay that close attention to it. Well, then, for Your Honor... Here, Your Honors, there was no such express retention of jurisdiction. Express means clear, definite, not left to inference. In here, the simple cite to Melina Camacho and the Board's decision should not be determined to be such an express, clear retention of jurisdiction. In matter of MD, the Board remanded for background checks to be completed. And this Court examined that remand in Fernandez and said that the purpose of the remand was for background checks. But that was not a limit on the scope of the remand. In Fernandez itself, the Board remanded to look into country conditions. And, again, this Court found that that was not a limit. Instead, it said, quote, an articulated purpose for the remand without any express limit on scope is not sufficient to limit the remand such that it forecloses consideration of other new claims or motions that the IJ deems appropriate or that are presented in accordance with relevant regulations. So if the Board did not expressly retain jurisdiction and limit the scope of the removal of the remand in those cases, then it can't be found to have limited the scope of the remand simply by citing to Melina Camacho. Assume that we agree with you that while it's permissible inference and maybe an experienced lawyer would understand the significance of that reference to that one case, as the BIA said an experienced lawyer should know. But assume we agree with you. What do we do with the last full paragraph in the Board's order in which it gives us a kind of a belt and suspenders order? It says, even if the new evidence sought to be introduced at the turn of the IJ on remand were credited, nonetheless, he's failed to show torture. That says to me, okay, we agree with you. We send it back. And the BIA says, well, look, we already told you what we're going to do with this evidence. So what do we do? In response, the BIA stated that Petitioner would not be prejudiced, was not prejudiced by the judge's failure to consider his evidence. But in all due respect to the Board, the Board is in no position to do that because the judge didn't allow Petitioner to present his witnesses to testify. But the primary witnesses, the primary evidence is going to be a letter from an uncle. And the BIA says the respondent argues on appeal that his new evidence in the form of a letter from an uncle in China and reports on current country conditions in China reveals that Falun Gong members are persecuted and tortured in China. BIA continues, while there may be some mistreatment of Falun Gong members in China, the respondent has not established that he's more likely than not to be persecuted and tortured in China, especially since it's uncontested that he did not provide credible testimony about his Falun Gong membership. So as I read it, the BIA has said, you know, the evidence is not admissible. That was the import of our order. The IJ quite properly, says the BIA, kept it out. Nonetheless, we're looking at it right now, and we tell you that even if we do consider it, he still loses. So what do I do with that? Well, Your Honor, the problem is that the Board simply ignored the fact that Petitioner also tried to present witnesses that were going to testify to his current Falun Gong activities. The Board doesn't mention it because the Board never heard from those witnesses because the IJ didn't let them talk. I got it. So this Belt and Suspenders argument, the BIA is not taking into account all of the evidence he sought to present. It couldn't because it never reached the record, Your Honor. I got you. Okay. And to that end, we believe that the country conditions evidence clearly indicates that if Petitioner is able to establish that he has this connection to Falun Gong now through credible testimony of his witnesses, that that arguably is enough to show that he will be persecuted and tortured if he is returned to China. And as I recollect, the first time around when the IJ heard the case, despite the adverse credibility finding by the IJ, the IJ originally found that he was eligible for cat relief. Yes, he did, Your Honor. So as far as the IJ is concerned, the adverse credibility finding did not disqualify him from cat relief. Or withholding, Your Honor. The judge granted withholding and cat. The board reversed, then responded and attempted to present new evidence. Now, in that new evidence, along with the witnesses who are going to say he is currently affiliated with Falun Gong, he currently practices Falun Gong, states that the Chinese government has operatives based overseas. This is from the State Department report, that the government has operatives based overseas that report on the activities of Falun Gong practitioners. It states that people are detained upon return to China. And it states that the Chinese government was expanding and deepening its battle against cults, including the Falun Gong. Now, when all of that is taken into consideration, Petitioner feels that he was prejudiced by the fact that the immigration judge improperly limited his ability to present that. I'd like to. You're almost paying on three minutes. Good work. Okay. Thank you, Your Honor. Let's hear from the government. May it please the Court. John Inglis for the United States. Your Honors, there's two primary issues in this case. The first is the Board expressly limited remand to a specific scope and purpose by remanding with a citation to the Court's holding of Melino Camacho. Why does that express? I mean, I understand that that's permissible interpretation of that order, but the Patel standard is pretty strict, and I'm not sure that it meets the Patel standard. It's an express reference to the specific case, Your Honor, that stands for one exclusive purpose, that the Board at that time was not allowed to enter a final order of removal, and that if the Board overturns a grant of relief from removal, the Board has to remand the case to the immigration judge for the specific purpose of entering an order of removal. This issue has been considered by this Court in a couple of different cases. We recognize that Trungpa Lanky cuts against the government's position, Your Honor, as was noted in our 28J letter. However, it also considered this issue of Mahana, Guzman, and Majid. In Majid, which is cited in our opening brief, the Court called a Melina Camacho remand ministerial, and it's the government's position that a ministerial remand pursuant to Patel, pursuant to Fernandez, is a limited remand for a specific scope and purpose. And if the BIA had said this is a Melina Camacho remand, and solely for the purpose of a Melina Camacho remand, I would have absolutely no difficulty with the government's position. But what we have is an order that just has a citation. Two things, Your Honor. First off, the remand language in this case is very similar to the remand language in several of the other cases that I just cited to the Court. The second is, if the Melina Camacho citation in this case does not have the purpose of limiting the scope and purpose of the remand, that citation is bereft of meaning. Basically, what the Court has – what the Board has said here is that the immigration judge has vacated insofar as it grants a Petitioner withholding of removal and protection against – under the Convention against Torture, and the record is remanded for further proceedings. If Melina Camacho, which is cited thereafter, does not limit the scope and purpose, then that citation has no purpose. Let me ask you this. If we were to disagree with you on that point – you don't have to agree that we should, but if we were to disagree with you on that point, and if the record were reopened in front of the IJ so that additional evidence could be taken, how can we tell whether or not that additional evidence would have made any difference on the merits of Petitioner's case? I would ask the Court to look to the – on remand from the Board, the immigration judge had a brief hearing on March 10th of 2006. It's on page 112 through 121 of the record. And the immigration judge during that hearing looks to the evidence that Petitioner wanted to introduce. Now, the immigration judge was very direct with Petitioner and said that she did not think that it was going to change the case. But they do do a brief investigation as to what that evidence would be. And the immigration judge had a couple of points that I think are important. The immigration judge said the point is the Board simply sent this back because he was found not credible. I've got this in front of me, so if you could give me a page and a line number. That's 114, Your Honor. And I don't have the line number. Okay. So you read along and maybe I can pick it up. Okay. The point is the Board simply sent this back because he was found not credible. If he has given noncredible testimony in the past, I dare say I cannot find him credible now. Therefore, I will comply with the matter of Malina Camacho, in which the Ninth Circuit is indiscernible. The Ninth Circuit is indiscernible? No, I think the I.J. is indiscernible. Maybe it's because he wanted to say something about the Ninth Circuit that he meant to be indiscernible. All right. I want you to take what was said in the colloquy between the I.J. and your client to be, in effect, a proffer by not your client, but his client. This is a proffer by Mr. Wang, and that that is the basis on which we ought to evaluate whether there would be indifference if it were sent back, or on the contrary, do we take what your opposing counsel says into account, which is he was going to provide new evidence that was not discussed there about his current felon gong activity. He introduces evidence before the immigration judge, Your Honor, and that's the evidence that we should be looking at. There's five articles, reports, and there's an affidavit. The affidavit, once again, the immigration judge does consider and says that that would not change the outcome of this case, that the petitioner was found to be not credible and that the ---- Just remind me, was this the affidavit that did talk about his felon gong activities or not? This is the uncle's affidavit discussing ---- The uncle's affidavit. But more than that, it discusses current conditions in China. The immigration judge said that that wouldn't change anything because the alien petitioner was found to be not credible, and that is the government's position, Your Honor. But that part I don't understand because the I.J. found this person not credible, right? That's correct, Your Honor. And now on remand says, well, I found you not credible, and therefore, no matter what you say, I'm not giving you cat relief. I don't get it. First off, it's a change of immigration judge, Your Honor. But regardless of that, the grant of cat relief in the first immigration judge decision is based on the relief from removal in this country, claiming to be a felon gong member. The immigration judge said that the alien would therefore necessarily be tortured upon returning to China. And the board said that that holding was speculative. It's not based on his claim that he was a felon gong practitioner. It's more saying that because you applied, and that really would open up the floodgates to asylum and torture claims in this country, basically meaning that because you applied for asylum, therefore you're eligible. Well, it might open up the floodgates, but if it's true, it's true. But that wasn't based on the alien's testimony, Your Honor. That was based on the immigration judge reading the background materials. Yeah, but now on remand, that's precisely the evidence he wants to introduce, which is to support the fact or to support his contention that based upon his having said he was a felon gong practitioner here, he's going to be in trouble when he gets back. And that, I assume, is part of the evidence he's trying to introduce on remand that the IJ will not allow in. But that's the evidence he was found to be not credible. Well, but some of that has nothing to do with his credibility. It has to do with what the Chinese government will do to someone who is claimed here to be a felon gong member. But there's no holding that he actually was a felon gong member. And the evidence that he seeks to introduce about conditions in China does not impact whether or not he was or is currently a felon gong practitioner. But here's my problem with this. I mean, this is kind of tricky. You look at it from one angle, you see one thing. You look at it from another, you see another. It may well be that the IJ concludes that he's not a felon gong member, that the BIA agrees with that. Yes. But it may also be at the same time that the Chinese government will treat anyone who is claimed in the United States to be a felon gong member to be one, or that the Chinese government, looking at the claim in the United States by this petition of he's a felon gong member, plus whatever other evidence the Chinese government may have, may conclude quite the opposite, that this person is a felon gong member. So the mere fact that the IJ doesn't believe that he was a felon gong member may not control what the Chinese government may do to this person once he is sent back to China. There's a couple of responses, Your Honor. First off, there's an adverse credibility determination that the alien is not challenged in any of the subsequent proceedings after the initial immigration judge proceedings. And even the argument that Your Honor- Well, it kind of sounds as though he wants to do that by introducing his uncle's testimony. But- Because his uncle's letter is going to say he was a felon gong member. But the uncle is someone who was not even mentioned during the initial proceeding. Well, I understand that. That he comes out of nowhere. His mother, who introduced him to felon gong, who was in the United States, neither presented any testimony nor presented an affidavit. And so, you know, that was sort of what his opportunity was. And that's why the immigration judge was not impressed by the evidence that he either put on or wanted to put on. As to the uncle, as to what he was in China, correct? Yeah, I understand that. He was in China. What role, if any, does Fernandez play on the scope of what the I.J. could do? I think Fernandez, recognizing Your Honor drafted the opinion, it seems to me that Fernandez makes Patel Ninth Circuit case law the same holding. And that there wasn't much the immigration judge could or should have done in this case because of the express citation to Molina Camacho. If there had been. So your view is that because of the reference to Camacho, that that was shorthand by the BIA and everybody understood what it meant and given the fact that it was so constricted, that's how we should interpret it. Is that right? Yes, Your Honor. I think that the remand language in Fernandez is very broad-based, asking the board had asked the immigration judge to conduct factual findings into the possibility of future persecution. In this case, there were no issues left open except for the fact that there was a need for a final order of removal.  From your perspective, if we believe that is what the BIA intended, that's the end of the story and that I.J. was correct that no further testimony could be taken? That's correct, Your Honor. And it's our also belief that if that's not the case, that the petitioner suffered no due process violation in this case as they claim because the additional evidence in the case did not address the underlying adverse credibility discrimination. Okay. Thank you very much, Your Honors. Thank you. Your Honors, first, I guess I would like to address the site to Malina Camacho. In the Malina Camacho case, the Ninth Circuit itself contemplated a remand in which the immigration judge did not simply order removal. In other words, citing to Malina Camacho doesn't mean the judge cannot do anything else. In footnote 4 of Malina Camacho, the Ninth Circuit states that the case should be remanded to the I.J. Hang on a second. You're going too fast for me. Sorry, Your Honor. I've got no need to apologize. It's just that I want to make sure I've got Malina Camacho in front of me in the footnote to which you are referring. Okay. I now have that footnote. It says, go ahead. In footnote 4, the court says that the case should be remanded to the I.J. for further proceedings and states, quote, if the immigration judge issues a removal order, the normal course of appeal will bring the matter within our jurisdiction. Now, if Malina Camacho itself doesn't dictate that the immigration judge can only order removal, which is clear because the court says if the immigration judge orders removal, not when the immigration judge orders removal, then I don't understand how a board citing to that case can say, well, that means that nobody can do anything except order removal. Got you. What do you do with the argument, and I confess I've not read those other cases, but your adversary tells us that we have treated what I'll call the Malina Camacho orders by the BIA as limited to specific, the specific purpose only for entering the order of removal. How do you respond to that argument? Your Honor, there were four unpublished decisions. All the cases that Respondent cited are unpublished. Mahana was one case that he cited, but this is distinguishable because the board in that case vacated its decision, quote, only insofar as it entered an order of removal. It didn't vacate the entire proceeding. It said only the order of removal. And that was because there was no jurisdiction to do so based on the then law? Yes, Your Honor. The other two cases cited, Guzman and Majid, are unhelpful to this Court because nothing in those cases cites the language used by the board. So we don't know how explicit the board was in those cases. I would note that there was another unpublished decision. Chuklyanki Vasquez v. Holder, where the BIA vacated, pursuant to Molina Camacho and remanded for further proceedings and for entry of a new decision consistent with Molina Camacho and the prior decision of the BIA. And this Court found that the BIA did not expressly retain jurisdiction, nor did it expressly limit the scope of the remand, and that the I.J. had jurisdiction and should have decided the motion to consider additional evidence. Could you give me that case again? That's Chuklyanki Vasquez v. Holder. It was also part of the package, I forget the reference to it, that Respondent had sent to the board. And the citation for that case? Your Honor, it is not right in front of me. Give me the spell of the case name. C-H-U-Q-U-I-L-L-A-N-Q-I-V-A-S-Q-U-E-Z v. Holder. Okay. Thank you. I just want to be, before you sit down, I want to be sure. I gather that you do not contest the fact that because you don't appeal the denial of asylum or the adverse credibility determinations that you've not exhausted those administrative remedies there, and those are therefore not before us. That's true, Your Honor. I would like to note, however, that in the case of Al Harby v. INS, which is 242F3-882, it's a 2001 Ninth Circuit case, held that even when someone is found not credible, the evidence can establish a CAC claim, and that CAC can be granted. It depends on what the credibility goes to. Yes, Your Honor. Okay. Thank you very much. Thank you, Your Honor. Could you remind me of the citation? If you have that, yes. It's a 2010 Westlaw 503- Whoop, whoop, whoop, two. So you don't have an F-third cite. It's an unpublished case, Your Honor. Okay, so it's 2010, yeah. Westlaw 503-5003. 2010 Westlaw 503-5003. That's correct, Your Honor. What was the name of that again? It's a Chukowacki-Vasquez- That's the one you- Yes. So the battle of the unpublished opinions, none of which bind us. Right. Okay, thank you both. But nice arguments on both sides. Thank you. Thank you, Your Honor. The case of Wang versus, well, now Holder submitted for decision. Thank you.
judges: Hug, Fletcher W. , Smith M.